UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DEAN A. SAUER, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | 3:06-CV-470-RLM |
| ) | |
| SKICO, INC., ) | |
| ) | |
| Defendant ) | |

MEMORANDUM OPINION AND ORDER

This cause comes before the court on the motion of defendant SKICO, Inc.[1]
for summary judgment on plaintiff Dean A. Sauer's claims under the Age
Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* Mr. Sauer contends
that he w2as wrongfully discharged from Rite Choice Foods on the basis of age.
SKICO denies engaging in discrimination and argues that Mr. Sauer cannot
establish a *prima facie* case. The court agrees and grants SKICO's motion because
the undisputed facts show that Mr. Sauer was not satisfactorily performing his
job, and further, no similarly situated employee less than 40 years of age was
treated more favorably than Mr. Sauer.

I. FACTS

Mr. Sauer began his employment with SKICO on October 1, 1996 a the age
of 42, as the manager of the new meat department at Rite Choice Foods. Dave

---

[1]"SKICO" is the corporate name for a grocery store chain owned by Garry Miller,
and includes Miller's, Miller's Market, and Rite Choice Foods in Nappanee, Indiana.

Rasler was Mr. Sauer's supervisor and had been store manager of Rite Choice
Foods. Mr. Rasler was responsible for the daily operations of Rite Choice Foods
and worked almost daily. Ken Kilgore, SKICO's director of operations from 1991
until August 2006, was Mr. Rasler's direct supervisor and Mr. Sauer's indirect
supervisor. Mr. Kilgore was responsible for the daily operations and profitability
of all of the SKICO stores, and visited Rite Choice Foods once or twice a week.

Mr. Sauer alleges that he had been employed for less than a year, Mr. Rasler
said Mr. Sauer's prior employment was presumably terminated due to Mrs.
Sauer's health and medical bills, and told Mr. Sauer to keep his wife's medical
bills down or he might not have a job. Despite Mr. Rasler's ongoing intimidation
of Mr. Sauer to keep his wife's bills at a minimum, and his telling Mr. Sauer to
divorce his wife just before Mr. Sayuer's termination, the bills were paid and Mr.
Sauer remained employed as the meat department manager for almost 9 years.
On August 29, 2005, Mr. Kilgore terminated Mr. Sauer, then aged 51. Mr. Sauer
believes that he was fired based on his age solely[2] because of the comments made

---

[2]Mr. Sauer also contends that Mr. Rasler tried to intimidate Mr. Sauer into
quitting by treating Jordan Sauer, Mr. Sauer's son, unfairly. Jordan Sauer worked on
and off at Rite Choice Foods from 2002 through July 22, 2005. Mr. Sauer claims that
on July 21, 2005 Mr. Rasler confronted Jordan about not paying for a bag of Chex Mix
and a bottle of Powerade. Jordan was adamant that he paid for his purchases, but Mr.
Rasler required Jordan to pay again or admit to stealing the items, and take a
polygraph. Jordan paid the money, but refused to take a polygraph and discontinued
his employment. None of these allegations support an age discrimination claim under
the ADEA, nor has Mr. Sauer by counsel asserted a claim for constructive discharge—
as there is not sufficient proof that Mr. Sauer's working conditions were such that a
reasonable person would find them unbearable or intolerable in a discriminatory way.
McPherson v. City of Waukegan, 379 F.3d 430, 440 (7th Cir. 2004); Griffin v. Potter,
356 F.3d 824, 830 (7th Cir. 2004); Rabinovitz v. Pena, 89 F.3d 482, 489 (7th Cir.

by Mr. Rasler[3] about his wife's high medical bills— which, according to Mr. Sauer, indicated that he and his wife were older. Aside from these comments, Mr. Sauer admits that no one at SKICO made any derogatory comments to him about his age.

As Rite Choice Foods' meat department manager, Mr. Sauer was responsible for scheduling and supervising meat department assistants, keeping the meat department clean, operating in compliance with the county board of health regulations, and contributing to the meat department's profitability by pricing meat and offering a variety of desired meat products to customers. Due partly to Mr. Sauer's performance, Rite Choice Foods was cited for numerous repeated health code violations. After a February 2003 inspection, Mr. Sauer was made aware that his chewing gum in non-designated areas and wiping his hands on his apron were health code violations, and he was advised of corrections that needed to take place in the meat department. Despite Mr. Rasler's telling Mr. Sauer that Rite Choice Foods could be shut down due to the violations, Mr. Sauer is "sure" some of the meat department violations occurred again.[4]

Later in 2003, after another health department inspection noted noncompliance in the meat department, Mr. Kilgore and Mr. Rasler counseled Mr.

---

1996).

[3]Mr. Rasler didn't make the decision to terminate Mr. Sauer's employment but recommended for several years that Mr. Kilgore terminate Mr. Sauer for his insubordination and inability to follow sanitation requirements.

[4]Plf's Depo. at 97-98.

Sauer about the ongoing problems with his performance, and began a practice of writing a note to Mr. Sauer's personnel file each time Mr. Sauer was verbally warned about his poor performance. Mr. Sauer doesn't recall any discussion with Mr. Rasler about the violations, but Mr. Rasler's notes in Mr. Sauer's personnel file reflect the following: on April 23, 2003, Mr. Rasler explained to Mr. Sauer that he couldn't have food or drinks in the meat department or chew gum while cutting meat, couldn't contaminate ready-to-eat food with raw food, and couldn't wipe his hands on his bloody apron; on June 17, 2003, Mr. Sauer was warned not to use the same uncleaned grinder to make ready-to-eat sandwich spread and raw hamburger due to the possible presence of E. Coli; on June 24, 2003, Mr. Sauer was warned that failing to comply with food safety would result in his termination; on July 23, 2003, despite having a new separate grinder, Mr. Rasler saw Mr. Sauer again use an unwashed grinder for raw and ready-to-eat food and again explained to Mr. Sauer the problem of potential contamination[5]; on February 12 and April 19, 2004, Mr. Rasler warned Mr. Sauer to use a box cutter rather than just the blade[6]— Mr. Sauer's failure to comply after being warned resulted in his injury from using only the blade; on March 9, 2005, Mr. Rasler saw Mr. Sauer

_____

[5]Mr. Rasler called Mr. Kilgore at the main office and advised him of Mr. Sauer's ongoing health risks and poor attitude. Knowing that the meat department would have to be closed if Mr. Sauer was terminated without a replacement, Mr. Kilgore gave Mr. Sauer a stern verbal warning and documented Mr. Sauer's personnel file on July 28, 2003, about Mr. Sauer's needing to clean the grinder daily, properly use sanitizer, and keeping sandwich spread separate from raw meat.

[6]Mr. Sauer recalls receiving Mr. Rasler's warning to use a box cutter. Plf's Depo at 110, 113.

shaving a ham after a smoke break with unclean hands and Mr. Rasler warned Mr. Sauer never to do it again; on March 19, 2005, Mr. Rasler saw Mr. Sauer slicing cheese on a bloody meat tray and Mr. Sauer became upset after receiving a warning[7]; and on July 7, 2005, Mr. Rasler caught Mr. Sauer with pop in the meat department and chewing gum while cutting meat, and again Mr. Sauer received a warning.

Mr. Kilgore personally warned Mr. Sauer of his unacceptable behavior—requiring on June 17, 2005 that Mr. Sauer start a log book noting each time he cleaned the grinder, and again lecturing Mr. Sauer on August 18 or 19 to clean the grinder daily. Mr. Sauer kept a grinder log as requested, but admitted he didn't clean the grinder every day or even every other day as directed.

After July 2003, Mr. Rasler and Mr. Kilgore began a search for a trained meat cutter to replace Mr. Sauer. It was not until early 2005 that 58 year-old James Carney, Sr., with 42 years meat cutting experience, initially accepted the offer to become Rite Choice Foods's meat department manager. Mr. Carney was concerned about the reported health department violations in Rite Choice Foods's meat department, but he thought the problems were due to Mr. Sauer and could be corrected. Mr. Carney was scheduled to start on May 2 until his employer offered him a raise to remain the meat cutter at Lance's Super Valu grocery store, causing Mr. Carney to withdraw his acceptance of the job at Rite Choice Foods.

---

[7]Mr. Rasler reported the incident to Mr. Kilgore.

Mr. Kilgore and Mr. Rasler then began training SKICO employee Barry Floyd[8] to be Mr. Sauer's replacement. By August 2005, Mr. Floyd was trained sufficiently enough to be a meat cutter, and Mr. Floyd took over as the meat department manager on August 29. Mr. Kilgore terminated Mr. Sauer for reportedly "fail[ing] to be progressive enough to build sales at the level [they] were looking for, various food code/health violations (critical), [and] unwilling to try new things."[9]

Mr. Sauer believes he was performing his job duties to SKICO's expectations and that SKICO's three reasons for his termination were a pretext for discrimination. Mr. Sauer claims that the declining sales were not in the meat department, but in the regular grocery area, and that neither Mr. Rasler nor Mr. Kilgore had mentioned his failure to be progressive before because he consistently displayed a willingness to try new things, including using new digital scales and sanitizer systems. Mr. Sauer argues that he must have been performing as expected because he consistently earned his bi-annual bonus— yet he admitted that those bonuses were based on his making a certain percentage of profits. Mr. Sauer insists that the last storewide health inspection report he knew about was completed in November 2003, long before his termination. Thus, he claims SKICO acquiesced to the violations by not providing Mr. Sauer with written warnings that his job was in jeopardy during the last 22 months of his employment.

---

[8]Mr. Sauer believes that Mr. Floyd was approximately 35 years old at the time.

[9]Complaint at Exb. C.

Mr. Sauer filed an EEOC charge in February 2006 asserting his age discrimination claim under the ADEA, but the EEOC was unable to conclude that Mr. Sauer established a violation of the statute. After receiving his right to sue letter, Mr. Sauer timely filed suit under the ADEA in this court. Mr. Sauer seeks reinstatement, or alternatively, damages for his lost earnings, prejudgment interest, punitive damages, and an award of costs and attorney fees.

Defendant SKICO seeks judgment on Mr. Sauer's claims, arguing that Mr. Sauer cannot establish a *prima facie* case of discrimination because Mr. Sauer was not meeting SKICO's legitimate expectations, nor was a similarly situated younger employee treated more favorably than Mr. Sauer, and, Mr. Sauer cannot demonstrate pretext.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Turner v. J.V.D.B. &

7

Assoc., Inc., 330 F.3d 991, 995 (7th Cir. 2003). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a reasonable jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 841-842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'") (*quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

## III. DISCUSSION

### A.  *Motion to Strike*

Before addressing the merits of defendant's summary judgment motion, the court must address the defendant's motion to strike, to which Mr. Sauer did not respond. SKICO seeks to strike portions of the affidavits of Mr. Sauer, Rebecca Hayes, and Barry Sauer. Courts may only consider properly designated evidence of a kind that would be admissible at trial when ruling on a motion for summary judgment. FED. R. CIV. P. 56(e); Waldridge v. American Hoechst Corp., 24 F.3d 918, 921 n.2 (7th Cir. 1994).

SKICO asserts that paragraph 12 of Mr. Sauer's affidavit, regarding the

ALJ's determination as to Mr. Sauer's unemployment compensation claim, should be stricken as inadmissible evidence under IND. CODE 22-4-17-12(h). The court grants the motion because the proceedings and outcome of Mr. Sauer's claim for insurance benefits is irrelevant to the motion pending before this court. FED. R. EVID. 402.

SKICO argues that paragraphs 2, 5, 7, 9, 10, and 11 of Mr. Sauer's affidavit should be stricken because Mr. Sauer attempts to create an issue of material fact by submitting statements that contradict his prior deposition testimony. *See* Piscione v. Ernst & Young, L.L.P., 171 F.3d 527, 532 (7th Cir. 1999). The court agrees that portions of Mr. Sauer's affidavit seemingly contradict his sworn deposition testimony, and rules on each contested paragraph as follows:

Mr. Kilgore and Mr. Rasler both supervised Mr. Sauer,[10] and any suggestion to the contrary found in paragraph 2 is stricken. As to paragraphs 5 and 11, the statements that Mr. Sauer "had no knowledge of any such [health inspection] *reports* [after November 3, 2003]" and that "[February 26, 2003] was the last time that [Mr. Sauer] had been *confronted with* any health inspection *reports*" are not contradictory statements, nor do the statements contradict Mr. Sauer's deposition responses specified by SKICO which reveal his mere lapse of memory and/or his actual knowledge of specific inspection *reports*, specific health *violations*, and

---

[10]Plf's Depo. at 87-88.

various *visits* made by the health inspector.[11] Therefore the court declines to strike paragraphs 5 and 11 of the affidavit. As to paragraph 7, Mr. Sauer's statement that he "regularly and throughly clean[ed] the meat grinder" is limited by his deposition testimony— that despite instructions to clean the grinder every day or every other day, in July 2003 Mr. Sauer was only cleaning the grinder approximately three times a week, and in August 2005 Mr. Sauer was not cleaning the grinder even every other day.[12] Further, as to paragraphs 9 and 10 of Mr. Sauer's affidavit, with paragraph 9 stating "it was apparent to me that both [Mr. Rasler], and Ken Kilgore, only gave casual respect for the cleanliness of the meat department, and therefore, I believe that I was measuring up to their lax expectations for the cleanliness of that meat department" and paragraph 10 reading "[there existed a] demonstrated lack of concern, by [Mr. Sauer's] SKICO supervisors, for the cleanliness of the meat department"— the court allows Mr. Sauer's testimony about his personal beliefs regarding his work performance,[13] but strikes the remaining identified portion of paragraph 9 and paragraph 10, because these conclusory statements are contradicted by Mr. Sauer's deposition

---

[11]Mr. Sauer's lack of knowledge as to health inspection reports after November 3, 2003, does not implicate a lack of knowledge by Mr. Sauer of various health violations which Mr. Kilgore and Mr. Rasler counseled Mr. Sauer on but continued to occur.

[12]Plf's Depo. at 109-110, 118-119.

[13]An employee's self-serving statements about his ability . . . are insufficient to contradict an employer's negative assessment of that ability. *See* Dey v. Colt Const. & Development Co., 28 F.3d 1446, 1460 (7th Cir. 1994).

testimony acknowledging his supervisors' concern over his poor cleaning habits, the health code violations, and the possibility that Rite Choice Foods could be shut down if the violations were not corrected.[14]

Statements not based on personal knowledge and without factual support in the record cannot defeat a summary judgment motion. *See* Evans v. City of Chicago, 434 F.3d 916, 933 (7th Cir. 2006); Butts v. Aurora Health Care, Inc., 387 F.3d 921, 925 (7th Cir. 2004). Paragraph 8 of Mr. Sauer's affidavit, paragraph 6 of Rebecca Hayes's affidavit, and paragraph 5 of Barry Sauer's affidavit confirm Mr. Rasler's use and failure to clean the meat cutting table and meat saw without the affiants' personal knowledge— and so are stricken. It remains that Mr. Sauer testified he was responsible for the meat department's clean-up and for supervising his assistants, including his younger assistants, Barry Sauer and Rebecca Hayes.[15] The court also strikes paragraph 6 of Mr. Sauer's affidavit wherein Mr. Sauer asserts that Mr. Rasler did not have a practice of writing a note "for [Mr. Sauer's] file" each time he counseled Mr. Sauer. Not only did Mr. Sauer fail not set forth facts supporting his personal knowledge of either Mr. Rasler's actions or the contents of his personnel file at various times throughout his employment, but the record shows that Mr. Rasler and Mr. Kilgore's placed verbal discipline notes in Mr. Sauer's file over the course of Mr. Sauer's employment. The court cannot assume that the notes, like the inspection reports, don't exist simply

[14]Plf's Depo. at 98.

[15]Plf's Depo. at 93, Rebecca Hayes Aff. at ¶ 3, Barry Sauer Aff. at ¶ 3.

because they weren't presented to Mr. Sauer.

The court denies SKICO's request to strike the allegedly "self-serving" language found in paragraphs 11, 13, and 14 of Mr. Sauer's affidavit, paragraph 7 of Rebecca Hayes's affidavit, and paragraph 6 of Barry Sauer's affidavit. Assuming the truth of the statements at this time does not affect the court's summary judgment ruling.

### B. Motion for Summary Judgment

Mr. Sauer alleges that SKICO fired him to hire a younger employee, Barry Floyd, which amounted to discrimination under the ADEA. The ADEA prohibits an employer from discriminating against individuals 40 years of age and older, 29 U.S.C. § 631(a), with respect to compensation, terms, conditions, or privileges of employment. 29 U.S.C. § 623(a). "To establish a claim under the ADEA, a plaintiff-employee must show that 'the protected trait (under the ADEA, age) actually motivated the employer's decision'—that is, the employee's protected trait must have 'actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome.'" Hemsworth v. Quotesmith.Com, Inc., 476 F.3d 487, 490 (7th Cir. 2007). Mr. Sauer can try to prove his discrimination claims through either the direct or indirect methods of proof. Id.; Raymond v. Ameritech Corp., 442 F.3d 600, 610 (7th Cir. 2006).

Direct proof of discrimination includes near-admissions by the employer that its decisions were based on a proscribed criterion, and circumstantial evidence that suggests discrimination through a longer chain of inferences.

12

Hemsworth, 476 F.3d at 490. *But see* Sanghvi v. St. Catherine's Hosp., Inc., 258 F.3d 570, 574 (7th Cir. 2001) (direct evidence can also be shown by "remarks and other evidence that reflect a propensity by the decision-maker to evaluate employees based on illegal criteria. . ."); Bennington v. Caterpillar Inc., 275 F.3d 654, 659 (7th Cir. 2001) (direct evidence is evidence that can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents); Radue v. Kimberly-Clark Corp., 219 F.3d 612, 616 (7th Cir. 2000) (direct evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus).

Mr. Sauer hasn't presented direct evidence that SKICO discriminated against him because of age. There is no evidence of an admission by Mr. Sauer's supervisors that their treatment of Mr. Sauer was because of his age, nor is there circumstantial evidence demonstrating intentional discrimination. Mr. Rasler's comments about Mrs. Sauer's high medical bills don't amount to direct evidence of age discrimination because those comments do not lend an inference that SKICO terminated Mr. Sauer due to Mr. Sauer's age. Even so, the medical bills were paid during Mr. Sauer's employment for 9 years. And as Mr. Sauer admits, neither Mr. Kilgore nor Mr. Rasler, the only decision-makers here, made derogatory age-based comments to Mr. Sauer. Mr. Sauer must proceed under the indirect method of proof.

Under the indirect method, Mr. Sauer must establish a *prima facie* case of age discrimination by showing that (1) he was in the protected age group; (2) he

13

was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly situated, unprotected employee. *See* Halloway v. Milwaukee County, 180 F.3d 820, 825-826 (7th Cir.1999). Upon such a showing, the burden shifts to SKICO to articulate a legitimate non-discriminatory reason for Mr. Sauer's discharge. Barricks v. Eli Lilly and Co., 481 F.3d 556, 559 (7th Cir. 2007). If SKICO satisfies this burden, Mr. Sauer bears the ultimate burden of showing that SKICO's proffered reason is a pretext for age discrimination. Id.

There is no question that Mr. Sauer can establish the first and the third elements of the *prima facie* case. He was protected at the age of 53 and suffered an adverse employment action upon his termination. The court need only consider whether he was performing up to SKICO's legitimate expectations and whether any similarly situated employee less than 40 years old was treated more favorably than Mr. Sauer. Mr. Sauer cannot establish either element.

That Mr. Sauer received regular bonuses twice a year for attainment of sales goals doesn't negate his admitted failure to comply with explicit directions to clean the grinder at least every other day, directions given as early as July 2003 and not followed even at the time of his termination in August 2005. Mr. Kilgore and Mr. Rasler made it known to Mr. Sauer that his health code violations were unacceptable. After the February 2003 inspection, Mr. Sauer was told that he couldn't wipe his hands on his apron or chew gum while cutting meat. Yet these violations recurred, as documented in the health inspection reports, Mr. Rasler

14

and Mr. Kilgore's personnel file notes, and admitted by Mr. Sauer himself.

Mr. Sauer alleges that SKICO acquiesced for several years by not showing him the inspection reports and the documented oral warnings and telling him his job was in jeopardy. Nothing in the record suggests that SKICO was required to do so, nor does the ADEA require it. *See* Wittwer v. Maclean Hunter Pub. Co., 73 F.3d 365, *6 (7th Cir. 1995) (the "ADEA does not provide a remedy for [an employer's] failure to warn [an employee] of any performance deficiency, absent evidence of age discrimination on the part of [SKICO]"). Looking at the presented evidence of Mr. Sauer's performance around the time of his termination, he did not perform his duties to keep the meat department clean, in compliance with the health code. Mr. Sauer cannot establish satisfactory job performance or a *prima facie* case of age discrimination.

Even if Mr. Sauer could establish the first three elements of the *prima facie* test, he hasn't identified a similarly situated employee who was not a member of his protected class and received more favorable treatment. *See* Radue, 219 F.3d at 617. A similarly situated employee must be "directly comparable to [plaintiff] in all material respects." Atanus v. Perry, 2008 WL 696908, *7 (7th Cir. March 17, 2008); Grayson v. O'Neill, 308 F.3d 808, 819 (7th Cir. 2002). This normally entails a showing that Mr. Sauer and the unprotected younger employee dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them. Radue, 219 F.3d

15

at 617-618.

Mr. Sauer hasn't submitted any evidence of a similarly situated employee treated more favorably than he. Blanket assertions that Mr. Sauer's supervisors didn't treat younger employees the same doesn't suffice. The only SKICO employees Mr. Sauer identifies were Barry Sauer, Rebecca Hayes, Iona Slabaugh, and Barry Floyd. None of their ages are identified. Even if these employees were each under the age of 40, none were meat department managers or similarly situated to Mr. Sauer. Barry Sauer and Rebecca Hayes were only meat department assistants. Nothing in this record suggests that either was charged with the same duties and responsibilities as Mr. Sauer or committed repeated health code violations after being warned not to do so. Neither worked as often as Mr. Sauer, and in fact, both were under Mr. Sauer's supervision. Similarly, no evidence suggests that Iona Slabaugh even worked in the meat department, let alone that she committed health code violations. Instead, it appears that Ms. Slabaugh was a cashier and ordered frozen food and beauty products for Rite Choice Foods. Barry Floyd is also not similarly situated. Mr. Floyd didn't become a meat department manager until after Mr. Sauer's termination. Even inferring that Mr. Floyd had the same responsibilities as Mr. Sauer once Mr. Floyd received training and became the meat department manager, there is no evidence that Mr. Floyd ever violated any health code requirements or failed to follow the instructions of Mr. Kilgore or Mr. Rasler. Without establishing the fourth element of the *prima facie* case, Mr. Sauer can't establish a meritorious claim of age discrimination.

16

Lastly, had Mr. Sauer established a *prima facie* case of age discrimination, SKICO produced sufficient evidence to support its nondiscriminatory reason for firing Mr. Sauer. To show that SKICO's stated reasons were a pretext for discrimination, Mr. Sauer must establish more than business error, as "pretext" means deceit used to cover one's tracks. *See* Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000); Kulumani v. Blue Cross Blue Shield Ass'n., 224 F.3d 681 (7th Cir. 2000) (pretext means a dishonest explanation, a lie rather than an oddity or an error).

Mr. Sauer alleges that Mr. Kilgore's hastily scribbled notes of August 29, 2005 represent "phony" reasons for Mr. Sauer's termination. The court disagrees. Drawing all reasonable inferences in Mr. Sauer's favor, Mr. Sauer was not performing his job satisfactorily by committing repeated documented health code violations. Mr. Sauer admitted to not cleaning the meat grinder as instructed, even at the time of his termination in August 2005. *See* Reeves v. Sanderson Plumbing, 530 U.S. at 148 (although a plaintiff establishes a *prima facie* case of discrimination, combined with sufficient evidence that the employer's asserted justification is false, a rational fact-finder could still conclude that an action was non-discriminatory where the record conclusively reveals some other non-discriminatory reason for the employer's decision). The bonuses Mr. Sauer received creates no jury issue because such bonuses were based on a percentage of profits earned, not on Mr. Sauer's satisfactory job performance in keeping the meat department clean. The failure to provide prior written notice that Mr. Sauer's

17

job was in jeopardy is not evidence of pretext, as Mr. Sauer was well aware of his health department violations repeated after the initial health inspection reports, yet he didn't correct his ways.

There is no evidence suggesting that SKICO's proffered reason for terminating Mr. Sauer was not the real reason, had no basis in fact, or was insufficient to warrant termination. *See* Atanus v. Perry, 2008 WL 696908, *8 (7th Cir. March 17, 2008). Mr. Sauer's deposition testimony, SKICO's documented verbal warnings, and the health inspection reports reflect Mr. Sauer's consistent performance issues and lack of attention to his required job duties.

## IV. CONCLUSION

Viewing the record in the light most favorable to the non-movant, no reasonable trier of fact could find that Mr. Sauer has established that he was performing his duties to SKICO's legitimate expectations or that a similarly situated younger employee was treated more favorably. Accordingly, Mr. Sauer has not carried his burden of establishing a *prima facie* case of age discrimination. Had he done so, there is no dispute that SKICO's nondiscriminatory reasons for terminating Mr. Sauer were honest.

Based on the foregoing, the court GRANTS IN PART AND DENIES IN PART defendant SKICO's motion to strike [Doc. No. 24], GRANTS defendant SKICO's motion for summary judgment [Doc. No. 16], and DIRECTS the clerk to enter judgment in favor of defendant SKICO, Inc. and against plaintiff Dean Sauer. This

18

case is considered closed, with each party to bear its own costs.

SO ORDERED.

ENTERED:_____March 27, 2008_____

_____/s/ Robert L. Miller, Jr._____
Chief Judge, United States District Court
Northern District of Indiana